## UNITED STATES *v.* BEYER.

*(Circuit Court, S. D. Georgia, E. D.* May, 1887.)

1. ADMIRALTY—JURISDICTION—CRIMINAL OFFENSES.
   The United States courts have jurisdiction to try charges of crime committed on board any vessel belonging in whole or in part to the United States, or any citizen thereof, at any point on the high seas, or in any river, haven, creek, basin, or bay within the admiralty jurisdiction of the United States, and out of the jurisdiction of any particular state.
2. SHIPPING—AUTHORITY OF MASTER—PERSONAL CHASTISEMENT.
   While a master of a vessel has been held justified in inflicting moderate personal chastisement on a seaman for impertinent language and disobedience of orders, it would be far more decent to resort to other methods of punishment.
3. SAME—ASSAULT UPON SEAMAN—SELF-DEFENSE.
   Where the master assaults a seaman, the seaman may endeavor to escape, and if pursued by the master and the assault is repeated, the seaman may resist in such manner as to protect himself from injury, and if the assault is made with a deadly weapon, or otherwise dangerously, the seaman is authorized to use equivalent and necessary force in his own protection.
4. SAME.
   Where a master commits an assault upon a seaman, the seaman would not be justified in repelling it with a dangerous weapon unless the facts were such as to justify the belief that he was in serious bodily danger.
5. SAME—SEAMAN'S DUTIES.
   Where a mate in command of a vessel lying at anchor, after working hours ordered a seaman to wash his (the mate's) clothes, and the seaman declined in respectful terms, an assault upon the seaman was wholly unjustifiable.

*(Syllabus by the Court.)*

Assault on the High Sea with a Dangerous Weapon.
*Du Pont Guerry,* U. S. Atty., for plaintiff.
*A. R. Lawton, Jr.,* for defendant.

SPEER, J., *(charging jury.)* The defendant, William Beyer, is charged with assaulting with a dangerous weapon one Smith upon the high seas. The assault is charged to have been committed upon an American vessel. The jurisdiction of this court extends to assaults of that character committed upon an American vessel at any point on the high seas, or in any arm of the sea, or in any river, haven, creek, basin, or bay within the admiralty jurisdiction of the United States, and out of the jurisdiction of any particular state, on board any vessel belonging in whole or in part to the United States or any citizen thereof. If you believe from the evidence that the assault was committed as charged, and that it was committed on an American vessel at the point designated by the witnesses who testified upon that subject, to-wit, nine miles from the shore in the roads of the river La Plata, this court would have jurisdiction to confer upon you the power to find your verdict upon the matters in issue in the indictment.

I believe there is no dispute that the offense was committed, if committed at all, within the jurisdiction of the United States court, and therefore you need not inquire further into that question. You will

therefore limit your investigations to the truth of this single issue: Was the defendant guilty, as charged, of committing an assault with a dangerous weapon, upon Smith, the mate of the bark Hazeltine? It is not disputed by the defendant that he did inflict the injury upon Smith, about which the prosecution is had, but he does dispute that it was an assault within the meaning of the statute. He insists that it was done in his own self-defense, and that therefore it was justifiable, and that he cannot be properly convicted for it. It appears that the master of the vessel at the time of the difficulty was on shore at Buenos Ayres; that the ship was lying out some eight miles from the shore in the river Plata; and that it was under the command of the first mate, Clinton. The party injured was the second mate. There is but one witness offered on the part of the government who speaks as to the main occurrence, the stabbing, and that is the steward or cook, Crowley. He testifies that the mate and the defendant were fighting; that they were fighting a stand-up fight; that he saw defendant trying to get out his knife; saw him get out his knife and stab the mate and cut him; and that he himself ran forward to prevent further cutting; and that the defendant cut him without any excuse or reason to do so. If this story is credible, you will be justified in finding the defendant guilty as charged. You will, however, take into consideration all the evidence. You will consider the testimony of Clinton, the first officer. He speaks of a previous difficulty between the defendant and this mate, but does not speak as to the facts of the stabbing. You will also consider the testimony of the defendant. He is permitted by the humanity of our laws to testify in his own behalf, and you can attach such importance to his testimony as you think it deserves. He tells you that he was forward after 7 o'clock on the day of the difficulty; that it was after working hours; that the ship was at anchor; that the second mate came forward and directed him to fill certain barrels with water, and he remarked, "That might have been done in working hours;" that the mate requested him to repeat that; when he did repeat it, and the mate struck him several times in the face with his fist; that the first mate was there and encouraged the second mate to strike him again; and that when this ended, the defendant states, he went and washed the blood from his face, and then was called aft for some duty as a seaman; that the mate then met him, and told him that he must wash his (the mate's) clothes at once; and that he said, "Excuse me, sir; that is no seaman's duty." Thereupon the mate fell upon him and began to beat him; that the steward or cook, Crowley, came out to the assistance of the mate; and they both assaulted, and were beating and choking him. Feeling that he was about to suffer serious bodily injury, he drew his knife and lay about him with it with purpose to relieve himself from the attack which was being made upon him. If you believe that state of facts to be true,—and you will also consider the testimony of the other witnesses offered for the defense, in weighing the evidence of this transaction,—the conduct of Smith, the second mate, was altogether unjustifiable. It is true that the master or other officer in command of a vessel has absolute charge on board ship, and his

orders, if not unlawful, must be obeyed; and that submission to these orders is among the first duties of the seamen. It is also true that the deportment of the seamen toward the master should be respectful; and the master has been held justified in inflicting a moderate correction to the seamen for disobedience of orders, and for impertinent language and behavior. Although it would be far more dignified and decent in a master or other officer in command of a vessel to refrain from attacking or inflicting personal chastisement upon seamen, where there is disobedience of orders, and no great emergency exists.

When a master attempts to assault a seaman, even for disobedience of orders, unless it is a case of great emergency, the seaman may endeavor to escape, and if pursued by the master or other officer, and a repetition of the assault is made, the seaman may lawfully resist in such a manner as to protect himself from injury; and if the assault upon the seaman is made with a deadly weapon, or other dangerous weapon, he is entitled to use equivalent and necessary force in his own protection; he is not debarred of his right of self-defense. The same rule would apply if the assault should be made by an officer without a deadly weapon, if the assault were of a character which would subject the seaman to serious bodily harm. Because he is a seaman he does not on that account cease to be a man, with the rights and privileges of a man in his personal defense.

If you believe in this case that the second mate seized this man by the throat and choked him until he became blind from the result of the choking; if you further believe from the evidence that the steward assisted in this; and that they were cruelly assaulting him in such a manner that he felt he was in danger of serious bodily injury;—he had the right then to use just such force as was necessary to repel that injury and to protect himself.

It is for the jury to say whether the use of such a weapon as he did use would be justifiable. That you will determine, gentlemen, from the facts in this case. The prisoner ought not to be justified in using a dangerous weapon like that which he admits to have used unless the circumstances were such as to justify him in believing that he was in danger of serious bodily injury from the assault—unless he felt, and was justified in feeling, from the evidence of his surroundings, from the character of the assault, from the fact that assault had been made upon him previously, from the further fact that two were making an assault upon him—that he was in serious bodily danger—then he would be justified in using all the force necessary to protect himself just precisely as he would be if the difficulty occurred on shore, and as if the relations of seaman and master did not exist between himself and his officer.

You will also further take into consideration the fact that this vessel was lying at anchor; that there was no special emergency at that time for the obedience of any order which would justify a serious assault by the mate or other person on that vessel, upon the defendant. I charge you further, that if you believe from the evidence that the second mate, after working hours were over, and after the first assault upon the

defendant, and after 7 o'clock at night, ordered the defendant to wash·
his clothes, it was a petty act of tyranny which the defendant was not
obliged to obey; and if the mate assaulted him because the defendant
refused to wash his clothes at that time, the defendant would be justified
in resisting that assault; but he would not be justified in using a deadly
weapon unless, under the rule I have already given you, the assault was
of that character as to satisfy him that he was in danger of serious bodily
harm to himself.

In weighing this evidence you will take into consideration all the facts
likely to influence the testimony of the witnesses as defining and fixing
the amount of credibility you should attach to the testimony of each.

If you believe from the evidence that the steward, Crowley, has bad
feeling against this defendant, you will attach to just such bad feeling,
and the prejudice which would naturally arise from it, such weight as
you think it ought to have in estimating the credibility of the testimony
of Crowley.   You will also consider, in estimating the value of the tes-
timony of the defendant himself, all the interest that he has in this case
because he is the defendant.   You should not allow the evidence of other
assaults made upon the defendant by the steward, Crowley, to influence
your minds, except in so far as it would tend to throw light upon his
motives, and to enable you to say whether or not he was telling the truth
of this transaction.

If, on reviewing all the evidence, you have a reasonable doubt, (which
doubt should arise from the evidence or from the want of evidence. and
should be such a doubt as a sensible man could give a good reason for,)
either as to the truth of the testimony of the witness Crowley for the
prosecution, or as to the comparative weight of evidence, or whether the
defendant acted in self-defense,—you should give the defendant the ben-
efit of that doubt, and acquit him.   He comes before you with the pre-
sumption of innocence in his favor.   That presumption has the weight
of evidence that he is innocent unless it is removed by the evidence which
has been offered on the part of the government.   If you believe that the
government's testimony shows that this was an assault made with a dan-
gerous weapon, and not in the defendant's self-defense, or otherwise jus-
tifiable, it will be your duty to convict the defendant, and your verdict
in that case would be: "We, the jury, find the defendant guilty."   If
you believe that the government fails to make out its case because of the
want of credibility in the testimony of its witnesses, or if you believe
that the defendant was justified in the assault, and that he made it in
his own self-defense, it will be your duty to acquit the defendant; and
if you have a reasonable doubt from the evidence as to what is your duty
in the premises, it is your duty to acquit the defendant; and if you find
the defendant is not guilty, you will say so by your verdict in these ·
words: "We, the jury, find the defendant not guilty."   As you believe
so you must find.

The prisoner was acquitted.